## Swindler v. Kenton & Campbell Benevolent Burial Ass'n.

(Decided Dec. 2, 1938.)

ROUSE & PRICE for appellant.

GALVIN & TRACY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, a licensed undertaker doing business in the city of Covington, Kentucky, who was plaintiff below, brought this suit in the Campbell circuit court against the appellee, Kenton & Campbell Benevolent Burial Association, a corporation under the laws of Kentucky, to recover of it the face amount of six burial insurance certificates issued by the defendant to six different persons, all of whom, upon death, had been buried by the plaintiff.

Plaintiff set out in his petition the names of the

holders of the insurance certificates, date of issuance, and date of death of the policy or certificate holders, and alleged that by contract with representatives of the deceased policy holders, he agreed to and did bury the deceased policy holders, and agreed to and did accept, and there was delivered to him, the policies issued to the decedents in part payment of the funeral services; that he demanded payment of said policies but defendant refused and failed to pay same. Plaintiff further alleged that each of said certificates or policies contained the following provision:

"This association will pay the benefit herein provided for in money only, to such one of the Funeral Directors or Undertakers appointed by it and named on this certificate, as a member or after his or her death, those nearest in relationship to, or caring for, or in charge of such member or his remains, may select, and it will not pay such benefit to any other person whomsoever. * * *"

Plaintiff attacks the validity of that part of the policy quoted above insofar as it designates the funeral directors or undertakers named in the policy and, providing that the association will not pay the benefits to any other person; but, assert that it is the intention of the Burial Association Act that the undertaker who buried the insured and no other may be designated beneficiary.

Plaintiff further alleges that:

"Plaintiff says that the defendant Association filed in the Campbell Circuit Court its action No. 28181 wherein it sued John Quinn, Alice Carr, George Jack, Joseph Necamp and Joseph Luebke, defending in behalf of themselves and more than forty thousand persons similarly situated. This action was filed on the 15th April, 1932, wherein plaintiff therein sought a construction of its policies or certificates and for a declaration of its rights under Chapter 33 of the General Assembly Acts of 1932; that said action was by this Court decided in favor of plaintiff therein and was appealed to the Court of Appeals, wherein it was decided that said Act was inapplicable to existing contracts between the Association and members; that its certificates were not in violation of the burial association acts; and were not in restraint of trade in that the repre-

sentatives of the deceased policy holders could select one of nine specified bonded undertakers.''

Plaintiff also alleged that the judgment obtained in favor of plaintiff in that action in the circuit court, and affirmed by this court, was obtained by fraud perpetuated by the defendant herein, plaintiff in that action, in that, the five named defendants did not fairly represent the policy holders of the plaintiff association, and that the Association fraudulently concealed many other facts necessary to a proper determination of the case, and that the attorney who represented the five named defendants in that action knew or ought to have known that said defendants are employees of the plaintiff and did not fairly represent the other policy holders and that the said attorney had been and is now attorney for the Newport Benevolent Burial Association who was interested in securing for the plaintiff association a decision favorable to it and to the undertakers named in its policies, and hostile to the policy holders of plaintiff Association.

Plaintiff filed his second and third amended petitions, which merely supplemented or elaborated its original petition, attacking the certificates or policies issued by defendant and its method of transacting its business, and prayed that the judgment of the Campbell circuit court rendered in the declaratory judgment action referred to, which was affirmed by this court (reported in Kenton & Campbell Benev. Burial Ass'n v. Quinn, 244 Ky. 260, 50 S. W. (2d) 554), be vacated and set aside and that the plaintiff recover the face amount of the burial certificates referred to in his pleading.

The opinion, supra, affirming the judgment of the Campbell circuit court in the declaratory judgment action decides adversely to plaintiff all questions raised in this action. But it is insisted that that judgment is invalid because it was procured by fraud.

It is pointed out in the opinion supra, of this court, that the only substantial change made in the then existing law (Sections 199a-1 to 199a-7, inclusive) by the Acts of 1932 is that (1) it prohibits the payment of benefits by a burial association in merchandise or services, and provides that all benefits must be paid in money; (2) that each burial association shall deposit with the State Treasurer securities to the amount of not less than $100,000 to be held by him for the benefit

of the policy holders of the association making such deposit; (3) it exempts from its provisions fraternal societies, fraternal benefit societies, assessment, life and accident insurance companies, associations existing or operating under and by virtue of the Statute of this state and any society which pays sick or disability benefits and which limits its membership to a particular class of persons or to the employees of a designated person, firm or corporation.

It is further held in that opinion that if the Legislature intended the 1932 amendment to apply to existing contracts it would have been invalid as impairing the obligations of contracts, but it was held that the Legislature did not intend that the 1932 Act should change or affect existing contracts, and in all other respects the 1932 amendment, as well as other existing laws pertaining to burial associations, and particularly this defendant association was held valid. And in speaking of that provision of the policy limiting the choice of funeral director to the nine persons or firms designated in the certificate issued to the member, the court said [page 556]:

"The only respect in which it could be argued that this contract fails to conform to the requirements of the act is the provision therein limiting the choice of a funeral director to the nine persons or firms designated in the certificate issued to the member. In prohibiting burial associations from paying funeral benefits in merchandise and services and requiring the payments of benefits to be made in money, the Legislature intended to protect the members of such association from fraud and imposition on the part of the insurer and to enable them to obtain the full consideration provided for in their respective contracts. The purpose of the member in the first instance in entering into the contract is to guarantee that he will receive a respectable burial. The proposed contract safeguards that purpose and prevents the proceeds of the policy from being diverted to another use. The member, or, after his death, those nearest in relationship to him, or having charge of his remains, may select one of the nine undertakers named in the certificate to furnish the specified merchandise and service. What effect a more limited field of choice would have as to the validity of the contract need not be deter-

mined, since we are of the opinion that the proposed contract affords the member, or after his death, the' one named therein as his representative, a field of choice sufficiently broad to render it unobjectionable under the act. The act provides that the payments made by burial associations shall be used as funeral or burial benefits, and the proposed contract guarantees to the insured that the proceeds of his policy will be used for the purpose intended by him, and is in accordance with the provisions of the act.''

In the case supra, the plaintiff in that action filed with its petition seeking a declaration of rights under the 1932 amendment a copy of the contract which it proposed to make with members subsequent to the date the act of 1932 becomes effective, and it is held in that opinion that defendants' proposed contract is in accordance with the provision of the Act and valid. The only change made in the contract proposed to be made after the effective date of the 1932 amendment is that it is in harmony with the amendment indicated above, numbered 1, 2 and 3, respectively; but, as in previous contracts, which were issued before the 1932 amendment, it retained that provision limiting payments of the benefits to anyone of the nine undertakers named in the certificate.

Burial associations, including the defendant, had existed and operated in Kentucky for a great many years prior to the passage of the 1932 amendment. It will be presumed that the Legislature was familiar with the methods of operations of these associations and had knowledge of the subject matter about which it was legislating.

In Schultz, Superintendent, v. Ohio County, 226 Ky. 633, 11 S. W. (2d) 702, it is held that the Legislature having knowledge of the Acts of 1918, Chapter 138 (Kentucky Statutes Supp. 1918, sec. 4399a-5), requiring fiscal courts to furnish county school superintendents with office free of charge, and that throughout the Commonwealth fiscal courts have been providing such offices, its failure to deprive school superintendents of such accommodations by express provisions in the 1920 Acts, Chapter 36, must be construed as an intention not to change existing laws. See, also, Grimes v. Central Life Insurance Company, 172 Ky. 18, 188 S. W. 901; Grieb v. National Bank of Kentucky's Receiver, 252 Ky.

753, 68 S. W. (2d) 21. With this knowledge on part of the Legislature, it is significant that by the 1932 amendment it modified the then existing law only as set out above but failed to modify it with respect to limiting a choice of undertakers or funeral directors to the ones designated in the certificate, and by its failure to do so evidently it did not consider as objectionable that provision of the policy. The burial association laws were again amended by the Acts of 1938, Chapter 150, now Section 199a-11, Kentucky Statutes, 1938 Supp., making it unlawful for any such policy, contract or bond, to provide that the payments of said benefits shall be made to any official undertaker or any designated undertaker. But it is specifically provided that that amendment shall not be applicable to any agreement, policy, contract, bond, assurance or guarantee in existence at the time of the effective date of the amendment.

As we have already stated, and for the same reasons, it will be presumed that the 1938 Legislature had knowledge of the fact that the policies or contracts already in existence contained that provision limiting the undertakers or funeral directors to the ones named in the certificate, and did not construe any law in existence prior to the effective date of the 1938 amendment as prohibiting designation of undertakers or funeral directors contained in contracts theretofore in existence.

It follows then that the judgment obtained by defendant in the declaratory judgment action does not in anywise affect the present case. It neither helps defendants nor mitigates against the plaintiff. We think the reasoning enunciated in the declaratory judgment opinion, supra, is sound and applicable to the issues presented in the present case.

Other questions are raised and discussed in brief for appellant, but having concluded the policies or certificates sued on are valid, it becomes unnecessary to discuss those questions, since they all relate to the validity of the contract.

Judgment affirmed.